1:21 MJ 9126

# AFFIDAVIT

I, Paul Cruz, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, being duly sworn on oath, hereby deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), Cleveland Division. I have been so employed since 2010 and as such have been assigned to investigate organized criminal enterprises engaged in a variety of racketeering offenses to include drug trafficking, money laundering, document fraud, theft, drug violations, and other criminal offenses which have occurred in, and outside, the Northern District of Ohio. I have training and experience in interviewing and interrogation techniques, arrests, search and seizure, search warrant applications, and various other procedures. In the course of conducting investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses, conducting physical surveillance, consensual monitoring and recording of both telephonic and non-telephonic communications, and executing search warrants. As such, I am an law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is , and officer of the United States empowered by law to conduct investigation of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. Prior to joining the FBI, I was employed for seven years as a United States Marine Corps officer. In that capacity I was assigned to work investigations involving fraudulent enlistments, fraud against the government, adultery, vehicle accidents, Congressional inquiries, litigation claims, and other crimes under the Uniform Code of Military Justice.

2. The statements contained in this affidavit are based on my personal observations as well as information developed by other Special Agents ("SA") of the FBI, Ohio Bureau of

Criminal Investigations ("BCI"), and officers and detectives of state, local, and federal police departments in Ohio who aided in the investigation. Unless otherwise noted, whenever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or an investigator (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Likewise, any information pertaining to vehicles and registrations, personal data on subjects, and record checks, has been obtained through the Law Enforcement Automated Data System ("LEADS"), various state driver's license motor vehicle records, online database searches or the National Crime Information Center ("NCIC") computers, and various open source databases such as LexisNexis.

3. Your Affiant has participated in and conducted investigations into activities involving narcotics and other illicit, not-narcotic controlled substances. Your Affiant is familiar with the methods with which drug traffickers conduct their businesses, including, but not limited to, their methods of importing, and distributing controlled substances, their use of cellular telephones, computers and other electronic devices, their use of businesses, houses, multiple vehicles and other facilities in which controlled substances are stored and meetings are conducted, and their use of numeric codes and code words to conduct their narcotics transactions. Affiant is also familiar with drug traffickers' use of communication devices, and texting applications and programs on such devices to conduct their businesses, including, but not limited to, transmitting information regarding price, quantity, and transportation of controlled substances.

4. Your Affiant is aware persons involved in criminal activity, particularly in the distribution of controlled substances, frequently attempt to conceal their identities, the locations

at which the illicit transactions occur, and the laundering of proceeds from the illicit activity to "plain" currency.

5.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 21 U.S.C. 841 (a)(1)(Possession with intent to distribute drugs) (hereinafter referred to as the "Target Offense") have been committed, are being committed, and will continue to be committed AARON JAMES, ZOLI SAUNT and other not yet identified.

## CONFIDENTIAL HUMAN SOURCE

6.      During the course of this investigation, law enforcement agents and officers have received information from a Confidential Human Source (CHS) regarding members of the Drug Trafficking Organization (DTO).  Some of the information from this CHS has been outlined in this affidavit. Information provided by the CHS has been corroborated to the extent practicable through investigative techniques including, but not limited to, physical surveillance, review of telephone toll records and pen register data, recorded telephone calls, conversations with other law enforcement officers, review of investigative reports and debriefings of other CHSs.  The CHS listed in this affidavit has provided information pertaining to the drug trafficking activities of the members of the DTO including JAMES and SAUNT.

7.      CHS has provided information to the FBI and Ohio Bureau of Criminal Investigations since November 2020.  CHS is providing information in the hopes of getting consideration at sentencing for pending drug charges for possession and distribution of controlled substances. CHS has no criminal and the information provided by CHS has proved reliable through independent verification.  Your Affiant does not have any reason to believe the information provided by CHS was false, therefor, your Affiant believes that CHS is reliable.

**PROBABLE CAUSE**

8. In 2018, the FBI and Ohio BCI began investigating JAMES to be associated with multiple illegal marijuana grow operations in Michigan. JAMES has been identified through physical surveillance at facilities located at 6360 St. Anthony Road and 9760 Head O Lakes Drive in Ottawa Lake, Michigan also known as Island Resort LLC. JAMES is further connected to these locations through subpoenaed utility records. CHS stated that JAMES' involvement in the cultivation, manufacturing and distribution of narcotics in Ohio produced from locations in Michigan. The primary source of supply associated with JAMES and his associates is the Island Resort LLC.

9. CHS stated that Aaron JAMES maintains and/or works at multiple houses located at the Island Resort LLC including house #6 that has or has previously maintained a large THC extraction lab. Furthermore, CHS stated that JAMES has been known to have purchased THC extraction equipment from CHS in June of 2020. The CHS has provided detailed information related to JAMES' cultivation and distribution efforts and has seen JAMES' operation at Island Resort LLC. Additionally, CHS stated that JAMES has recently conducted a large harvest of marijuana plants to be processed into THC distillate on or about October 27th, 2020.

10. CHS has provided JAMES' Instagram social media account of "serendipitous_selections." An open source search of this profile revealed numerous images all related to the cultivation of marijuana, and the manufacturing of THC based items. Furthermore, one of the items frequently shown in posted social media pictures on this accountant are "THC Diamonds," it is known from CHS that JAMES manufactures these illegal items in Michigan and distributes them regularly through Northern Ohio.

11. CHS stated that JAMES is known to travel back and forth from Michigan to Cuyahoga County, Ohio on almost a weekly basis. On November 16, 2020, a pole camera was erected at the residence of JAMES. The camera footage supported CHS' information that JAMES returned to his residence at the end of each week.

12. During the course of the investigation JAMES has been found to have no legitimate occupation apart from his criminal activity that would allow for him to afford day to day expenses. However, without a legitimate source of income JAMES has been able to purchase 2020 Ford F150 King Ranch, pay high utility bills associated with cultivation of marijuana and pay rent at multiple locations in Michigan and Ohio.

13. JAMES is known from the investigation to be an associate of ZOLI SAUNT. CHS stated that SAUNT to be involved in the distribution of bulk amounts of marijuana and/or THC based products. Both JAMES and SAUNT reside in the multifamily residence of 1696 and 1698 Coventry Road. Though there are different addresses associated with this residence is known to be one residential structure.

14. In November 2020 investigators began conducting trash pulls at the residence utilized by both JAMES and SAUNT. The first of these trash pulls occurred on November 4th, 2020 and discovered in the trash of the residence were mail documents identifying SAUNT as a resident of 1696 Coventry Road along with multiple packages that had previously contained suspected marijuana and/or THC related items.

15. A second trash pull was conducted by investigators on November 12th, 2020. From this trash pull investigators once again identified mail confirming SAUNT as an inhabitant of 1696 Coventry Road and along with empty packaging material and cut vacuum sealed bags

that had previously contained marijuana. Several of these items identified the strain of the marijuana plant that had been packaged in the discovered empty bags and packaging material.

16. On November 16th, 2020, the pole camera identified an unknown male approach the side door of the residence at 1622 hours. The male is wearing a hooded sweatshirt that appears to having nothing in the pocket at the time of his arrival. Approximately twenty minutes later the same individual is observed leaving this residence this time carrying a large bulging item in the pocket of his sweatshirt. This in and out behavior is consistent with individuals engaged in narcotics trafficking.

17. A third trash pull was conducted by investigators on November 18th, 2020. As with the other two trash pulls packaging materials were discovered related to the distribution of marijuana along with documents identifying SAUNT as an occupant of the home.

18. On November 18th, 2020, pole camera surveillance of the residence confirmed that both JAMES and SAUNT were at the residence together and the two were observed interacting with one throughout the day. Furthermore, both males were observed utilizing the same side door of the residence.

19. Additionally, on November 18th, 2020 while SAUNT and JAMES were both at the residence a dark color SUV is observed arriving at approximately 1714 hours. An unknown male carrying what appears to be an empty back pack is observed going to the side door of the residence and is let inside the home. Approximately ten minutes later the same individual is observed leaving the residence carrying the same back pack. This short visit in an out of the residence while JAMES and SAUNT where both at the residence was indicative of a drug trafficking offense.

20.     On November 20, 2020, a search warrant was issued in the Cuyahoga County Court of Common Pleas for the residence of JAMES and SAUNT. On November 25, 2020, the search warrant was executed. During the execution of the search warrant of the note the following items were recovered:

   a. 1.68 grams of Lysergic Acid Diethylamide (LSD)(approximately 920 hits)
   b. 2,721 grams of marijuana
   c. 739 grams of wax tetrahydrocannabinol (THC)
   d. 917 grams of liquid tetrahydrocannabinol (THC)
   e. American Classic, .45 caliber, handgun
   f. Smith & Wesson, .40 caliber, handgun
   g. Rock Island, 12-gauge, shotgun
   h. Approximately in cash $277,849
   i. Multiple scales and vape cartilages

21.     At the time of the execution of the search warrant, SAUNT was read and acknowledged his Miranda Rights, by Task Force Officer Jared Prill, and stated that he wanted to speak to an attorney. However, while being told that LSD and bulk marijuana were discovered during the search of SAUNT residence, while his two year old child was present, SAUNT stated, without being questioned, that SAUNT sells THC and bulk marijuana. However, SAUNT stated that the LSD was obtained at a concert on the west coast.

22.     Also at the time of the execution of the search warrant, JAMES was read and acknowledged his Miranda Right, by Special Agent Andrew Webb, Ohio BCI. JAMES stated that the THC was JAMES' and that he sells THC and marijuana to SAUNT. JAMES stated that he grows marijuana in Michigan and transports it back to Ohio to sell. JAMES stated that the

cash seized was from selling THC and bulk marijuana, as well as the sales from his legitimate glass pipe making business. JAMES stated that he rents marijuana grow sites and THC extraction locations in Michigan. JAMES also stated that he planned on making his marijuana grows legal in Michigan through the medical marijuana program.

## CONCLUSION

23. Based upon my training and experience, including my participation in this investigation, I believe that probable cause exists that AARON JAMES and ZOLI SAUNT are continuing criminal conspiracy involving narcotics trafficking in violation of Title 21 U.S.C. 841 (a)(1)(Possession with intent to distribute drugs). Therefore, it is hereby respectfully requested that the Court issue arrest warrants for JAMES and SAUNT in order to disrupt the DTO.

_____
Paul R. Cruz, Special Agent
Federal Bureau of Investigation

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Crim R. 41(d)(3) on this  18th  day of March, 2021.

_____
WILLIAM H. BAUGHMAN, JR.
United States Magistrate Judge
Northern District of Ohio

Time:  2:00pm